OPINION OF THE COURT
Donald J. Corbett, Jr., J.
Claimant, a New York State real estate partnership owns Loudon Plaza, a shopping center in Albany, New York. As owner and lessor, claimant on February 24, 1976 leased a portion of its plaza to C.F.M. Enterprises, Inc. (CFM), for the purpose of operating a convenience food market. CFM thereafter entered into a sublease or franchise agreement (neither was offered into evidence at trial), commencing on May 7, 1976 with one Fischer (lessee), to operate the Convenient Food Mart. That agreement terminated on or about August 18, 1985.
The lessee had applied on July 17, 1976 pursuant to the "New York state lottery for education law” (State lottery) for *811 permission to sell lottery tickets to the general public. Permission was granted and the lessee sold "instant game” lottery tickets until his agreement with CFM terminated. On February 4, 1984, after receiving approval from the State lottery, the lessee also commenced the sale of "on-line” lottery tickets. The "on-line” tickets were issued through a computer terminal on the premises and continued until the agreement with CFM terminated. A new lessee, succeeding Fischer, received approval from the State lottery and commenced the sale of "on-line” tickets on September 13, 1985.
The claimant herein, on or about July 11, 1985, apparently concluded that the installation of the computer terminal and sale of "on-line” lottery tickets was violative of its lease agreement with CFM, in the absence of the landlord’s consent. Claimant then demanded of both CFM and the State lottery the immediate removal of the lottery equipment, and cessation of all such putatively violative activity. Upon the trial herein there had been no compliance with such demand. (On October 3, 1986, Justice Harold J. Hughes in Supreme Court, Albany County, decided that claimant herein was entitled to a judgment declaring the sale of lottery tickets to be in violation of the lease agreement and granted an injunction to cure the violation [Sky Four Realty Co. v C.F.M. Enters.].)
This claim is grounded in a cause of action for trespass allegedly committed by the State of New York in installing equipment, including a computer terminal in February 1984, for the sale of lottery tickets and for the continuing trespass in refusing to remove said equipment and continuing to sell lottery tickets over the claimant’s objection.
This theory of liability, predicated as it is upon trespass and not upon contract (there is no privity of contract here between the claimant and the State), must be dismissed.
Here, the claimant surrendered possession and control of the leased premises to the lessee, subject to the terms and conditions of the lease agreement. CFM, through its agents, franchisees, or sublessees or employees, operated the premises as a Convenient Food Mart. Fischer and the succeeding lessee became licensed agents of the State lottery. The claimant retained no control of any portion of the leased premises.
Injury to possession is the gist of trespass whether to realty or chattels (PJI 3:8 [Supp], at 46). Broadly speaking, trespass includes an impingement on the right to possession (cf., People v Munafo, 50 NY2d 326, 329; Oatka Cemetery Assn. v Cazeau, *812 242 App Div 415), and thus an action for trespass may be maintained by a lessee against his landlord (Steinfeld v Morris, 258 App Div 228; 61 NY Jur, Trespass, § 25). A tenant in possession may recover the entire damage for injury from a trespasser to both his possession and the owner’s reversion, holding that part of the recovery attributable to the reversion, as trustee for the owner, who is barred from further action against the trespasser (PJI 3:8 [Supp], at 46-47).
But glaringly obvious, and with no exceptions presented to this court, is the principle of law that an owner who is out of possession cannot maintain trespass (Prosser and Keeton, Torts, Intentional Interference with Property, § 13, at 77-78 [5th ed]; cf., Boothe v Williams, 104 AD2d 841; Kent v Winn, 30 AD2d 703; Kelman v Wilen, 283 App Div 1113). As Prosser has noted, the owner is not without remedy, but he must show more than the trespass, namely, permanent harm to the property of such sort as to affect the value of his interest. Restating what would appear to be most obvious, an action for trespass may be brought by a person in exclusive legal possession at the time of the trespass (Allied 31st Ave. Corp. v City of New York, 27 AD2d 948), and the true owner’s proper remedy is in the form of an action for ejectment (Prosser and Keeton, op. ct., at 77).
It is thus clear that the claimant cannot prosecute an action for trespass against one who "invades” the premises with the permission of the lessee. This coheres logically as the State by virtue of its agreement with the lessee, is a licensee and not a trespasser.
The State also invokes the principle of estoppel in its defense, having established that the three individuals who comprise the claimant partnership have on numerous and regular occasions shopped in the Convenient Food Mart in which a 3- by 4-foot lottery sign was in the window and the lottery computer terminal was adjacent to the cash registers and hence impossible to miss. This defense, while inadequate, reinforces the untenability of the instant claim.
Similarly, Tax Law article 34, setting forth the New York State lottery for education, does not provide any assistance to the court in examining this claim.
The walls of this claim, like those of a Potemkin village, are merely a facade. Claimant would create a legal fiction, to wit, that the lessor retains authority to determine lease restrictions and then hold liable a third party with whom the owner *813 has no actual privity or involvement. This is a fable which the court will not countenance.
Accordingly, the State’s motion to dismiss made at trial and upon which I reserved decision is now granted and the claim herein is dismissed.