■ JACQUELINE J. LYNCH et al., Appellants, v BAY RIDGE OBSTETRICAL AND GYNECOLOGICAL ASSOCIATES, P. C., et al., Respondents.—In a medical malpractice action to recover damages for personal injuries, etc., the plaintiffs appeal from an order of the Supreme Court, Kings County (Shaw, J.), dated January 21, 1986, which granted the defendants' motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) and denied the plaintiffs' cross motion, *inter alia,* for partial summary judgment on the issue of liability. The appeal brings up for review so much of an order of the same court, dated March 5, 1986, as, upon reargument, adhered to the original determination (CPLR 5517 [b]).

Ordered that the appeal from the order dated January 21, 1986, is dismissed as that order was superseded by the order made upon reargument; and it is further,

Ordered that the order dated March 5, 1986, is affirmed insofar as reviewed; and it is further,

Ordered that the respondents are awarded one bill of costs.

This action emanates from the plaintiff Jacqueline J. Lynch's election to undergo an abortion after the defendant gynecologist, Dr. Rubino, without testing her for pregnancy, prescribed Provera, a hormonal drug known to the medical profession to pose a grave risk to the health of a live fetus if ingested during the early stages of pregnancy. At the time of her appointment with the defendant Rubino on November 29, 1983, Mrs. Lynch had not had a menstrual period for approximately three months. Two home pregnancy tests had produced negative results vis-à-vis the possibility of pregnancy. After a visual examination, the defendant Dr. Rubino informed her that she was not pregnant and prescribed the drug Provera in order to induce menstruation. He failed to perform either blood or urine analyses before so prescribing. Nor did he explain any of the drug's attendant risks.

The drug failed to induce menstruation. Mrs. Lynch telephoned Dr. Rubino complaining of nausea and was advised by him, after he admitted that he was not sure what the problem was, to continue taking the drug. On December 14, 1983, she made an emergency appointment with another gynecologist. Dr. Sebollena, who raised the possibility of pregnancy. Laboratory tests confirmed this diagnosis. Dr. Sebollena informed Mrs. Lynch of the possible adverse effects of Provera on a new fetus but noted that it was impossible to ascertain with certainty, at such an early stage of the pregnancy, whether the ingestion of Provera had harmed the fetus.

On December 21, 1983, Mrs. Lynch underwent a vacuum aspiration abortion under general anesthesia. There is no indication on record as to whether the fetus was actually abnormal.

The plaintiffs thereafter commenced an action against Dr. Rubino and his employer, the defendant Bay Ridge Obstetrical and Gynecological Associates, P. C., for damages emanating from the "serious and severe permanent physical and psychological injuries" sustained by Mrs. Lynch and for damages emanating from Mrs. Lynch's loss of services and consortium. The defendants moved for an order dismissing the complaint pursuant to CPLR 3211 (a) (7) while the plaintiffs cross-moved for partial summary judgment as to liability.

Although the plaintiffs allege that the psychic harm to Mrs. Lynch was in part the result of her having to obtain an

abortion in violation of her religious convictions, the instant case does not fall within the parameters of *Martinez v Long Is. Jewish Hillside Med. Center* (70 NY2d 697). In *Martinez,* the defendants to whom Mrs. Martinez had been referred for genetic counseling negligently advised her that her infant would be born with a congenital birth defect due to her ingestion of a certain medication in a supposedly improper dosage during the first month of her pregnancy. On the basis of that advice, Mrs. Martinez submitted to an abortion. It later developed that the defendants' advice was erroneous and that the abortion was, in fact, unnecessary. In upholding the mother's claim for emotional injuries predicated upon the negligent infliction of harm owing to her deep-seated religious beliefs, the Court of Appeals in *Martinez* found that Mrs. Martinez's mental anguish was the direct result of the "defendants' breach of a duty owed directly to her in giving her erroneous advice on which she affirmatively acted in deciding to have the abortion" *(Martinez v Long Is. Jewish Hillside Med. Center, supra,* at 699). Further, the court determined that the defendants' breach of duty was the proximate cause of those injuries. That is clearly not the case in the instant situation.

At bar, the defendants never affirmatively recommended an abortion to the plaintiffs or represented that the fetus was impaired. The record clearly reveals that it was Dr. Sebollena, a nonparty to this action, who while rendering genetic advice, informed Mrs. Lynch that the infant she was carrying could be born with severe birth defects such as shortened limbs or a weak heart. The plaintiffs, acting on their own, without the affirmative advice of the defendants, thereupon took the final step of procuring an abortion. On those facts, the plaintiffs have failed to show that the defendants' conduct was a substantial causative factor in the sequence of events which led to the abortion and its consequent psychic harm *(cf., Haffner v State of New York,* 121 AD2d 503; *see,* Restatement [Second] of Torts § 430). Given the intervening advice of Dr. Sebollena, there was no proof advanced by the plaintiffs that the abortion would not have occurred but for the defendants' negligence *(see, Mt. Healthy City Bd. of Educ. v Doyle,* 429 US 274, 285-287; *Boronkay v Robinson & Carpenter,* 247 NY 365; Prosser and Keeton, Torts § 41, at 266 [5th ed]). Under the circumstances, the plaintiffs, as a matter of law, have failed to demonstrate that the defendants' conduct was a proximate cause of the abortion.

The instant case is distinguishable from *Martinez (supra)* on

yet another fundamental ground. In *Martinez,* the direct breach of duty was to Mrs. Martinez who had been forced to undergo an unnecessary abortion as a result of the false information given to her by the defendant physicians regarding the health of her fetus. Here, in contrast, the defendants knew nothing about the fetus. It follows logically that they had no duty directly owing to Mrs. Lynch to protect the fetus from injury, the breach of which could have given rise to a viable cause of action *(see, Tebbutt v Virostek,* 65 NY2d 931; *Vaccaro v Squibb Corp.,* 52 NY2d 809). Since the touchstone of liability in tort cases is the breach by the defendant of a duty of due care owed the plaintiff *(Bovsun v Sanperi,* 61 NY2d 219, 233), the underlying complaint must be dismissed.

*Martinez (supra)* creates a cause of action solely on behalf of persons induced to violate their deep-seated convictions as a result of the affirmative misrepresentations of one from whom a direct duty is owed and, as such, is inapplicable to these facts. Thus, notwithstanding the heartrending choice with which the plaintiffs were faced as a result of these events, they have no legally cognizable cause of action against the defendants. Weinstein, J. P., Spatt, Sullivan and Harwood, JJ., concur.